# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

CONTRACTOR TOOL SUPPLY,
INC.,

        **Plaintiff,**

**v.**
                                     **Case No. 5:24-cv-347-JA-PRL**

JPW INDUSTRIES, INC.,

        **Defendant.**

_____

## ORDER

This case is before the Court on Defendant's motion to dismiss (Doc. 16) and Plaintiff's amended response (Doc. 23). Based on the Court's review of the parties' submissions, the motion must be granted.

## I.  BACKGROUND

Plaintiff, Contractor Tool Supply, Inc. (CTS), is a distributor of specialized woodworking and metalworking tools alleging unlawful trade practices by a prominent manufacturer of those tools Defendant, JPW Industries, Inc. (JPW). (Compl., Doc. 2). JPW manufactures several brands of specialty tools including the brands Axiom, Baileigh, Edwards, JET, Powermatic, and Wilton—and CTS was among its top distributors for years. (*Id.* ¶¶ 11–13, 39). As a distributor, CTS's business model is to purchase tools directly from manufacturers such as

JPW and resell them through its brick-and-mortar store location, its online store, and its Vera Tools Storefront on Amazon.com. (*Id.* ¶¶ 18, 21–24). JPW granted CTS "Preferred Vendor Status" in the autumn of 2021, meaning that JPW agreed to provide CTS with favorable trading terms so long as CTS met certain volume requirements.   (*Id.* ¶ 32).  The relationship initially proved successful, and CTS became the third largest source of sales for JPW.  (*Id.* ¶¶ 35–39).

In an effort to "protect the reputation and value" of its brands, JPW instituted a Minimum Advertised Price (MAP) policy, meaning that resellers of JPW's tools were prohibited from advertising those tools for sale below a price point defined by JPW.  (*Id.* ¶¶ 26–27; Doc. 16-1 at 3).  The MAP policy is referenced in the Complaint and attached as an exhibit to JPW's motion. (Compl. ¶¶ 55, 57, 84; Doc. 16-1).  In light of the pleadings and the parties' briefings on the motion to dismiss, the Court finds the MAP policy is "(1) central to the plaintiff's claims[] and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).  It therefore may be considered at this stage of the case. *See id.* at 1300–01.

As relevant here, the MAP policy provides as follows:

> The use of any language on the digital space to direct the customer to the shopping cart for actual selling price is limited to: "We offer the best prices", "Call for

Price", "Call with any questions", "Call for additional
questions related to the product" . . . . Unacceptable
language can be defined as "Price too low to display"
"See Price in Cart", "Add to Shopping Cart to See Price",
etc., and are all violations of the MAP policy.

(Doc. 16-1 at 4). Nevertheless, CTS employed an "aggressive marketing"
strategy on Amazon. (Compl. ¶ 44). For customers not logged into an Amazon
account who searched for a tool covered under the MAP policy, CTS listed no
price at all and instead prompted the customer to see the price displayed in the
online shopping cart. (*Id.* ¶ 29). And for customers logged into an Amazon
account CTS advertised the price set by the MAP policy but provided a lower
price once the customer added the item to their online shopping cart. (*Id.* ¶ 28).

Even though CTS is permitted to sell JPW's brands of tools on Amazon's
website, Amazon itself also sells JPW's tools and is therefore a competitor of
CTS. (*Id.* ¶ 25). Amazon allegedly became frustrated by CTS's sales tactics,
and Amazon's representatives met with JPW to discuss ways "to prevent CTS
from selling in a manner that put pressure on Amazon and JPW's margins." (*Id.*
¶ 46). Amazon and JPW allegedly agreed that JPW would "charge new fees to
CTS that were not imposed on Amazon and other distributors[] and prevent CTS
from selling JPW's products at prices lower than the advertised prices." (*Id.*
¶ 47). Based on this alleged agreement with Amazon, JPW's representatives
sent CTS email correspondence on March 11, 2024, stating that: (1) CTS's "Price
in Cart" discounts violate the MAP policy; (2) additional fees for credit card

payments would be imposed; (3) rebate to sales generated through CTS's brick-and-mortar store would be limited; (4) JPW would adjust rebates and sales goals for CTS; (5) CTS should strive to generate less than five percent of its sales through Amazon; (6) CTS's Amazon storefront should be managed by JPW's eCommerce team; and (7) CTS should not sell or stock through Amazon. (*Id.* ¶¶ 55–63). CTS rejected these proposed terms and JPW thereafter ceased filling CTS's orders for its products. (*Id.* ¶¶ 64–65).

CTS alleges that the agreement between JPW and Amazon and the enforcement of the MAP policy constitute unreasonable restraints on trade. To that end, it seeks damages and injunctive relief under the Sherman Act, 15 U.S.C. § 1 (Count II); the Robinson-Patman Act, 15 U.S.C. § 13 (Count III); the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201-501.213, Florida Statutes (Count IV); and the Florida Antitrust Act, § 542.18, Florida Statutes (Count V).[1]

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

---

[1] CTS is no longer pursuing Count I for breach of contract. (Doc. 22).

elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss brought under Rule 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## III.   DISCUSSION

### A.   Sherman Act Claim

Section one of the Sherman Act makes unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. This section "applies both to agreements between companies that directly compete with one another, called 'horizontal' agreements, and to agreements between businesses operating at different levels of the same product's production chain or distribution chain, known as 'vertical' agreements." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004). "The elements of a [Sherman Act] claim are that: '1) a conspiracy exists between two or more entities and 2) the conspiracy unreasonably restrains trade.'" *Tucci v. Smoothie*

*King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1300 (M.D. Fla. 2002) (quoting *Boczar v. Manatee Hosp. & Health Sys., Inc.*, 731 F. Supp. 1042, 1046 (M.D. Fla. 1990)).   Despite the sweeping language of § 1, "the Supreme Court's interpretation of the [Sherman] Act indicates that many forms of concerted action are to be evaluated under a flexible, case-by-case standard: the so-called 'rule of reason.'"[2] *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010) (citing *Standard Oil Co. v. United States*, 221 U.S. 58, 62 (1911)). Vertical price restraints like the one alleged here are subject to the rule of reason.  *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007).

### 1.   *Vertical Resale Price Maintenance*

The crux of CTS's Sherman Act claim is that JPW conspired with Amazon to vertically fix prices.   CTS alleges that JPW's MAP policy and the conditions set forth in Defendant's March 11, 2024 email amount to a "resale price maintenance" scheme, (Compl. ¶ 57), defined as "[a] form of price-fixing in which a manufacturer forces or persuades several different retailers to sell the manufacturer's product at the same price, thus preventing competition."

---

[2] The primary alternative to the rule of reason is the "per se rule," which is "reserved only for those agreements that are 'so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality.'" *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1083 (11th Cir. 2016) (quoting *Nat'l Soc'y. of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978)).   Neither party claims that the per se rule is applicable to this case.

*Resale-Price Maintenance*, Black's Law Dictionary (12th ed. 2024). CTS alleges that JPW's prohibition on "Price in Cart" discounts amounts to resale price maintenance because these restrictions prevented CTS from selling JPW's products at prices lower than the price designated in the MAP policy. (Compl. ¶ 47).

JPW, on the other hand, argues that these restrictions do not amount to resale price maintenance because the MAP policy expressly allows for the communication of below-MAP prices by phone or email. (Doc. 16-1 at 4). In short, JPW argues that enforcement of the MAP policy, including the restriction on "Price in Cart" discounts, "cannot be the basis of a vertical [resale price maintenance] claim because it does not restrain resale prices, but merely restricts advertising." *Worldhomecenter.com, Inc. v. KWC Am., Inc.*, No. 10 CIV. 7781 NRB, 2011 WL 4352390, at *5 (S.D.N.Y. Sept. 15, 2011). JPW supports its argument by reference to several out-of-circuit cases. *See, e.g., id.*; *Blind Dr. Inc. v. Hunter Douglas, Inc.*, No. C-04-2678 MHP, 2004 WL 1976562, at *7 (N.D. Cal. Sept. 7, 2004); *Campbell v. Austin Air Sys., Ltd.*, 423 F. Supp. 2d 61, 69 n.6 (W.D.N.Y. 2005). In its response, CTS does not directly engage JPW's argument. Based on JPW's argument, the Court finds that CTS has not plausibly alleged the existence of a vertical resale price maintenance scheme.

2.    *Rule of Reason*

Even assuming CTS has adequately alleged the existence of vertical resale price maintenance, the Complaint still comes up short under the rule of reason.  To state a claim under the rule of reason, an antitrust plaintiff must plead "(1) the anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the defendant's conduct has no pro-competitive benefit or justification." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996).  This requires an antitrust plaintiff to plead "(1) a geographic market and (2) a product market." *Jacobs*, 626 F.3d at 1336 (citing *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 464 (3d Cir.1998)).[3]  From there, the Complaint must "adequately allege actual or potential harm to competition." *Id.* at 1339.

"Actual harm is indicated by a factual connection between the alleged harmful conduct and its impact on competition in the market . . . ." *Jacobs*, 626 F.3d at 1339.  To state a claim, an antitrust plaintiff must make "specific factual allegations" of the "[a]ctual anticompetitive effects" of the defendant's conduct. *Id.* (quoting *Spanish Broad. Sys.*, 376 F.3d at 1073).  "By 'anticompetitive,' the

---

[3] JPW does not contest the sufficiency of CTS's geographic- and product-market allegations and the Court does not otherwise find them to be deficient. *See, e.g., Brown Shoe Co. v. United States*, 370 U.S. 294, 336–37 (1962) (holding that "the geographic market in some instances may encompass the entire Nation" and that "men's, women's, and children's shoes" is an adequately defined product market).

8

law means that a given practice both harms allocative efficiency and could 'raise[ ] the prices of goods above competitive levels or diminish[ ] their quality . . . .'" *Id.* (alterations in original) (emphasis removed) (quoting *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995)). "Actual anticompetitive effects include, but are not limited to, reduction of output, increase in price, or deterioration in quality." *Id.* (citing *United States v. Brown Univ.*, 5 F.3d 658, 668 (3d Cir. 1993)). However, "the primary purpose of the antitrust laws is to protect *inter*brand competition," or competition among manufacturers selling different brands of the same type of product. *State Oil Co. v. Khan*, 522 U.S. 3, 15 (1997) (emphasis added). Indeed, it is well-established that *inter*brand competition may be stimulated by reducing the *intra*brand competition that takes place "among retailers of the same brand." *Leegin Creative Leather Prods., Inc.*, 551 U.S. at 878. Thus, in general, "reduction in intrabrand competition is not an anticompetitive effect under the Sherman Act." *Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1290 (S.D. Fla. 2021) (citing *Leegin Creative Leather Prods., Inc.*, 551 U.S. at 890).

Here, CTS's "bald statement[s]" that "JPW's resale price maintenance has adversely affected interbrand competition" through "higher prices and diminish[ed] competition in the marketplace," (Compl. ¶¶ 85, 90), are inadequate to "establish[] the competitive level above which [JPW]'s allegedly anticompetitive conduct artificially raised prices." *Jacobs*, 626 F.3d at 1339.

Likewise, CTS's claim that JPW's conduct "dangerously limits" CTS's ability to "provide appropriate tools for its customers," (Compl. ¶¶ 18, 20), fails to allege actual harm "above the speculative level." *Twombly*, 550 U.S. at 545. Indeed, CTS's "sparse allegation" that the elimination of "Price in Cart" discounts will generate anticompetitive effects "is precisely the type of bare legal conclusion that was insufficient in *Twombly* and *Iqbal*." *Jacobs*, 626 F.3d at 1340. At most, the well-pleaded allegations in the Complaint allege harm only to intrabrand competition, which does not amount to actual harm under the rule of reason. *See Leegin Creative Leather Prod., Inc.*, 551 U.S. at 902.

Failing to plausibly plead actual harm to competition, CTS's "only avenue of relief [is] to sufficiently allege potential harm." *Jacobs*, 626 F.3d at 1339. To do so, CTS must (1) "define the relevant market and establish that the defendants possessed power in that market" and (2) make "specific allegations linking market power to harm to competition in that market." *Id.* (quoting *Levine*, 72 F.3d at 1551, and *Spanish Broad. Sys.*, 376 F.3d at 1073). The Complaint is also deficient on both of these requirements.

First, the Complaint does not plausibly allege that JPW has market power. The Eleventh Circuit has defined "market power" as the "ability to raise price significantly above the competitive level without losing all of one's business." *Graphic Prods. Distribs., Inc. v. Itek Corp.*, 717 F.2d 1560, 1570 (11th Cir. 1983) (citing *Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 678 F.2d 742, 745

(7th Cir. 1982)).   Because quantifying a company's "market power" is "conceptually difficult," courts often look to reliable indicia of market power—including market share and product differentiation—when undertaking this analysis. *Id.* Here, the Complaint alleges JPW has "significant market power throughout the United States as the parent company for the multiple brand names of the Products." (Compl. ¶ 14). But without allegations of product differentiation, JPW's market share, or specific factual allegations suggesting "restricted output and supercompetitive prices," the Complaint falls flat. *Jacobs*, 626 F.3d at 1340 (quoting *Rebel Oil*, 51 F.3d at 1434).

CTS cites *Graphic Products Distributors, Inc.* for the proposition that an antitrust plaintiff "satisf[ies] their burden of showing substantial market power by alleging the imposition of vertical restraints on distributors." (Doc. 23 at 10 (citing 717 F.2d at 1571)). But the *Graphic Products Distributors* court did not state that an antitrust plaintiff discharges their burden of showing the defendant's market power merely by alleging the imposition of vertical restraints on distributors. When considered in context, it is clear that the *Graphics Products Distributors* court found that the plaintiff's allegation that the defendant had market power at the time it imposed vertical price restraints was sufficient in light of the plaintiff's specific factual allegations pertaining to the defendant's market share and product differentiation. *See id.* at 1570–71.

Next, the Complaint "is bereft of the critical allegations linking [JPW]'s market power to harm to competition." *Id.* Indeed, the Complaint does not plausibly allege that competitors have reacted to the allegedly higher prices of JPW's tools, nor does the Complaint specifically allege marketwide increases in price or reduced output. In the absence of these types of factual allegations linking JPW's market power to harm to competition in the market, CTS fails to state a claim.

**B.     Robinson-Patman Act Claim**

CTS alleges JPW engaged in unlawful price fixing under the Robinson-Patman Act, 15 U.S.C. § 13. The elements of a price discrimination claim under the Robinson-Patman Act are "1) that the defendant discriminated in price, discounts, or services between purchasers of commodities of like grade and quality in the course of interstate commerce; 2) that the price discrimination resulted in the requisite injury to competition or competitors; and 3) at least the approximate amount of damages." *Walker v. Hallmark Cards, Inc.*, 992 F. Supp. 1335, 1338 (M.D. Fla. 1997) (citing *Chrysler Credit Corp. v. J. Truett Payne Co. Inc.*, 670 F.2d 575, 578 (5th Cir.1982)); *see also McGahee v. N. Propane Gas Co.*, 858 F.2d 1487, 1493 (11th Cir. 1988). "Price discrimination is not per se violative of the [Robinson-Patman Act]" the plaintiff must also show "some sort of real competitive injury." *Id.* (citing *Foremost Dairies, Inc. v. FTC*, 348 F.2d

12

674, 679 (5th Cir. 1965), and *DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.*, 990 F.2d 1186, 1202 (11th Cir. 1993)).  And the injury must be "causally connected to the alleged antitrust violation." *Id.* (citing *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1426–27 (11th Cir. 1990)).

In the Complaint, CTS alleges that JPW "unlawfully discriminates in the pricing of the Products between different purchasers, such as CTS and Amazon, (Compl. ¶ 97), by "allow[ing] Amazon to advertise and sell [its products] at prices below that which JPW permits . . . CTS[] to advertise and sell" its products,  (*id.* ¶ 100); that these products are of "like grade and quality," (*id.* ¶ 99); and that "no legal justification" exists for JPW's discriminatory pricing, (*id.* ¶ 103).   CTS claims that it "has suffered and continues to suffer actual damages as a direct and proximate result of JPW's discriminatory pricing of the Products, including without limitation monetary losses . . . over $1,000,000.00. (*Id.* ¶¶ 65, 94).

These  conclusory  allegations  that  JPW  engaged  in  unlawful discriminatory pricing are not sufficient to state a claim under the Robinson-Patman Act.  As an initial matter, a price discrimination claim that does not even indicate the products or prices at issue "fail[s] to provide [a defendant] with adequate notice of the basis for the claim." *Pentair Filtration Sols., LLC v. Superior Water Sys. Co.*, No. 12-62163-CIV, 2013 WL 12091626, at *4 (S.D. Fla. Nov. 14, 2013).   CTS is not required to plead "with exactitude," but the

13

Complaint still must be "supported by facts constituting a legitimate claim for relief." *Tires Inc. of Broward v. Goodyear Tire & Rubber Co.*, 295 F. Supp. 2d 1349, 1352 (S.D. Fla. 2003) (quoting *Mun. Utils. Bd. of Albertville v. Ala. Power Co.*, 934 F.2d 1493, 1501 (11th Cir.1991)). At a minimum, CTS must "give adequate notice of the kind of price discrimination and the range of [tools] of like grade and quality" that are implicated in the Robinson-Patman Act claim. *Id.* at 1353 (citing *United Mag. Co. v. Murdoch Mag. Distrib., Inc.*, 146 F. Supp. 2d 385, 395 (S.D.N.Y. 2001)). CTS has also not adequately alleged that JPW's practices have plausibly caused an injury to competition. Because CTS has failed to satisfy these minimum pleading thresholds, this claim must also be dismissed.

## C.   State Law Claims

Having found that CTS's claims under the Sherman Act and the Robinson-Patman Act must be dismissed, the Court must also dismiss CTS's state law claims under the Florida Deceptive and Unfair Trade Practices Act and the Florida Antitrust Act. *See All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 n. 11 (11th Cir. 1998) ("Federal and Florida antitrust laws are analyzed under the same rules and case law."); *see also St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*, 457 So. 2d 1028, 1032 (Fla. 2d DCA 1984) ( "[T]he Florida legislature has, in effect, adopted as

14

the law of Florida the body of antitrust law developed by the federal courts under the Sherman Act."); § 542.16, Fla. Stat.

## IV.   CONCLUSION

For the reasons given above, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. 16) is **GRANTED**. The Complaint (Doc. 2) is **DISMISSED without prejudice**. Plaintiff may file an amended complaint on or before January 10, 2025.

**DONE** and **ORDERED** in Orlando, Florida, on December ____, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record